UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT J.,[1] | ) |
|                *Plaintiff*, | ) |
|                *v.* | ) No. 1:22-cv-00344-MG-JMS |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
|              *Defendant.* | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In March 2020, Plaintiff Robert J. applied for Disability Insurance Benefits ("DBI") under Title II from the Social Security Administration ("SSA"), alleging a disability onset date of February 1, 2020. [Filing No. 9-5 at 5-13.] His application was initially denied on July 9, 2020, [Filing No. 9-3 at 2-7], and upon reconsideration on October 6, 2020, [Filing No. 9-3 at 9-17]. Administrative Law Judge Albert Velasquez (the "ALJ") conducted a telephonic hearing on April 26, 2021. [Filing No. 9-2 at 49-73.] The ALJ issued a decision on May 14, 2021, concluding that Robert J. was not entitled to receive benefits. [Filing No. 9-2 at 18.] The Appeals Council denied review on December 14, 2021. [Filing No. 9-2 at 2-4.] On February 16, 2022, Robert J. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 7.] For the following reasons, the Court **REVERSES** the decision of the ALJ denying Robert J. benefits.

## I.
### STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, he will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then he must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Robert J. was 57 years old on February 1, 2020—the date of his alleged onset of disability. [Filing No. 9-6 at 2.] Robert J. has four or more years of college and has relevant past work experience as an area market manager and retail market president. [Filing No. 9-6 at 7.] Robert J.'s application alleges that he can no longer work because of back injury, diabetes, arthritis, high blood pressure, and a large tumor removed from his back. [Filing No. 9-6 at 6.] Following the April 2021 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Robert J. was not disabled. [Filing No. 9-2 at 13-18.] Specifically, the ALJ found as follows:

- Robert J. meets the insured status requirements of the SSA through December 31, 2025. [Filing No. 9-2 at 13.]

- At Step One, Robert J. had not engaged in substantial gainful activity[3] since February 1, 2020, (the alleged onset date). [Filing No. 9-2 at 13.]

- At Step Two, Robert J. "had the following severe impairment: degenerative disc disease, osteoarthritis, and obesity." [Filing No. 9-2 at 13.]

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- At Step Three, Robert J. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 9-2 at 14.] The ALJ specifically considered Listings 1.15 and 1.16. [Filing No. 9-2 at 14.]

- After Step Three but before Step Four, Robert J. had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can occasionally climb ramps or stairs as well as balance, stoop, and crouch, but never climb ladders, ropes, or scaffolds, never walk on slippery or uneven surfaces, kneel, or crawl. He can never work at unprotected heights or around dangerous moving machinery. He can occasionally handle, finger or reach above head height with the right hand, but no rapid head or neck movement." [Filing No. 9-2 at 1.]

- At Step Four, the ALJ found Robert J. is capable of performing past relevant work as a Marketing Officer. [Filing No. 9-2 at 18.]

- At Step Five, the ALJ found that Robert J. has not been under a disability, as defined in the SSA, from February 1, 2020, through the date of the decision. [Filing No. 9-2 at 18.]

## III.
### DISCUSSION

Robert J. brings a single argument, that the ALJ committed error at Step Three in his SSR 16-3p mental RFC analysis due to an improper credibility determination. [Filing No. 16 at 7.] Robert J. contends that his symptoms are straightforward: he "alleges mild baseline pain that randomly flares to debilitating levels, causing him to lie down." [Filing No. 16 at 8 (citing Filing No. 9-2 at 57-58).] He notes that he takes pain medication that causes side effects including dizziness. [Filing No. 16 at 8.] Robert J. argues that both the baseline pain without medication and the dizziness with medication both affect his ability to concentrate and that the pain and medication side effects cause him to miss too much work. [Filing No. 16 at 8.] Lastly Robert J. argues that in combination, (1) the ALJ rejected his testimony that his medication causes dizziness even though he repeatedly informed doctors of the side effects, (2) the ALJ did not consider other measures taken to alleviate symptoms, including laying down when his pain became debilitating, and (3) he

5

was prescribed a TENS unit by his pain management physician, but the ALJ found this not "reasonably medically necessary." [Filing No. 16 at 8-10.]

In response, the Commissioner argues that the ALJ reasonably considered the relevant factors under SSR 16-3p and cited substantial evidence as it applied to those factors. [Filing No. 18 at 8.] Regarding dizziness, the Commissioner contends the ALJ's analysis was no inaccurate, as the ALJ noted Robert J.'s notes informing doctors of dizziness with pain medication but contends the ALJ also found that medication adjustments were made on multiple occasions. [Filing no. 18 at 9-10.] The Commissioner contends that the ALJ assessed more limits than any doctor did and included more generous limitations than the state-agency physicians through limiting Robert J. to work with no exposure to unprotected heights or hazardous machinery. [Filing No. 18 at 10-11.] Next, the Commissioner contends that the ALJ also reasonably considered Robert J.'s need to lie down on the floor while using his TENS unit when pain because severe, but reasonably found that these measures were not medically necessary through review of the record. [Filing No. 18 at 12.] Lastly, the Commissioner contends that Robert J.'s comparison of his dizziness and needing to lay flat due to pain to frequency and severity of headaches fails because the ALJ was not obligated to accept his alleged need to lie flat while using his TENS unit. [Filing No. 18 at 13.]

In reply, Robert J. argues that the ALJ's recitation of the facts were in error, and reliance on such incorrect facts cannot support the ALJ's factual findings. [Filing No. 19 at 3.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, the ALJ must provide specific reasons supporting his or her evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

SSR 16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available at* 2017 WL 5180304, at *1. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process and clarifies that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3.

If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step in which the ALJ must consider all the evidence in the record to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.* at *4. When assessing credibility of a claimant's symptom testimony, the ALJ also considers the factors set forth in 20 C.F.R. § 416.929(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal quotations omitted). And, "[n]ot all of the ALJ's reasons must be valid," to uphold a subjective symptom finding, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

At Step One, the ALJ found that Robert J.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [Filing No. 9-2 at 15.] However, at Step Two, Robert J.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 9-2 at 15.] The ALJ provided the following reasons to support this finding at step two: (1) his daily activities showed functioning consistent with the opined RFC; (2) regarding location, duration, frequency, and intensity of pain and symptoms, objective medical findings did not support the limitations to which Robert J. testified; (3) Robert J.'s allegations that activity and sitting for extended periods aggravates his back pain is reasonably consistent with objective evidence, clinical findings, and treatment history, and are

8

properly accounted for through limitations in work with no exertional limitations but postural and environmental limitations; (4) Robert J.'s treatment history failed to document significant ongoing allegations of side effects from medications that were not addressed by adjustments; (5) other than medication, Robert J. received physical therapy, chiropractic care and a TENS unit; and (6) Robert J.'s testimony that he needs to lay down flat or use his TENS unit is not supported as medically necessary in order to perform sustained work activity with the opined RFC. [Filing No. 9-2 at 15-17.]

Of these findings, Robert J. takes issue with the ALJ's evaluation of his statements on medication side effects causing dizziness and his need to lie down while using his TENS unit when the pain becomes debilitating, his non-treatment method of coping.

1. **Side Effects of Medication**

ALJs are required to consider a claimant's medication, including any side effects that they experience. SSR 16-3p, *available at* 2017 WL 5180304, at *8. The record reflects that Plaintiff was prescribed many medications, including: Metformin, Synthroid, Rosuvastatin, valsartan, Tizanidine, Voltaren, and Gabapentin. [Filing No. 9-2 at 17 (citing Filing No. 9-7 at 71.] Robert J. testified that the medications caused side effects of dizziness and diminished the quality of his work. [Filing No. 9-2 at 64-65.] The ALJ acknowledged Robert J.'s testimony but said that he "previously did not indicate any side effects and his treatment records fail to document significant ongoing allegations of side effects that were not quickly addressed through medication adjustments." [Filing No. 9-2 at 17.] This is not entirely accurate, as Robert J. reported dizziness and drowsiness with the pain medications. [Filing No. 9-7 at 61, 65, 67; Filing No. 9-8 at 10.]

While he denied side effects on some occasions, [*see* Filing No. 9-7 at 3-4, 9, 13, 17, 23, 120], the Seventh Circuit has held that a claimant's failure to report side effects does not mean that

9

he does not experience them. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). In any event, the ALJ seemed to credit Robert J.'s reported side effects later in the decision, writing that he "accounted for drowsiness in the above residual functional capacity by limiting [Robert J.] to work with no exposure to unprotected heights or hazardous machinery." [Filing No. 9-2 at 17.] Yet, the ALJ offered no explanation as to how these RFC limitations would accommodate Robert J.'s drowsiness and dizziness from medication. *See Clifford*, 227 F.3d at 872 (ALJs must "build an accurate and logical bridge" from the evidence to the conclusion). While the ALJ was not required to fully credit Robert J.'s testimony, he was required to provide an analysis of how these side effects would affect his ability to work. *See e.g., Jayson J. v. Saul*, 2020 U.S. Dist. LEXIS 21332, 2020 WL 597657, at *17 (N.D. Ind. Feb. 7, 2020).

### 2. Measures Other Than Treatment

An ALJ is required to consider treatment that a claimant receives for her impairments, including medication and treatment other than medication, and measures other than treatment. ." SSR 16-3p, *available at* 2017 WL 5180304, at *8. The ALJ noted as a treatment method, that Robert J. uses or has used his TENS unit, and reports that he lays down flat when using the unit as a further measure. [Filing No. 9-2 at 17.] The ALJ found that the record failed to demonstrate such methods were not reasonably medically necessary so he could perform sustained work activity consistent with his opined RFC. [Filing No. 9-2 at 17.]

Robert J. contends that his pain management physician prescribed the TENS unit to alleviate his pain when it becomes severe, and he lays down flat as a further method, but the ALJ incorrectly concluded this was not medically necessary. [Filing No. 16 at 9.] He further contends that he told his physician that debilitating pain required him to lie down when it occurred. [Filing NO. 16 at 9 (citing Filing No. 9-7 at 61, 65).]

The Commissioner, instead, contends the ALJ did not refer to the TENS unit itself as medically unnecessary, but in combination with laying down as another treatment method. [Filing No. 18 at 11.] The Commissioner contends the ALJ noted the TENS unit first as treatment other than medication, along with massage therapy, home exercise, chiropractic care, and physical therapy, and then the ALJ then went to measures other than treatment that Robert J. employed to relieve symptoms, i.e., laying down flat. [Filing No. 18 at 11.] The Commissioner argues that the measures other than treatment section is where the ALJ took issue with Robert J.'s contention he needed to lie down and use his TENS unit, finding such combination was not reasonably medically necessary from evaluation of the record. [Filing No. 18 at 11-12.]

In reply, Robert J. argues that he testified that when working, he had to pull over when driving and lie down for at least 30 minutes, and that when using his TENS unit, he needed to sit down or lie down to use it. [Filing No. 19 at 6 (citing Filing No. 9-2 at 60-61).] Robert J.'s counsel acknowledges that it is debatable whether he would truly need to sit or lie down to wear a TENS unit, as it may be small and wearable, however he argues the ALJ did not explore the possibility of additional time off task while using the TENS unit. [Filing No. 19 at 6-7.] Further, Robert J. notes that he told Dr. Mohammad Majid that he needed to stop ad lay down, which would happen at work, and told Dr. Alexandra Nitu that his pain causes him to lie down on the floor until it eases. [Filing No. 19 at 7 (citing Filing No. 9-7 at 61).] Robert J. acknowledges that the ALJ does not have to accept this requirement of laying down, however he contends that bringing this method of relief up to doctors shows consistency in the record with his hearing testimony. [Filing No. 19 at 7.]

The Court agrees with Robert J. on this point. It appears the ALJ acknowledged Robert J.'s prescription for the TENS unit as a treatment other than medication. However, what the ALJ found

not reasonably medically necessary was the combination of the TENS unit and laying down due to lack of record evidence for laying down. There is no indication in the record that Robert J.'s physicians prescribed laying down flat on the floor as a treatment method—it appears to only be Robert J.'s preferred means of coping to which he testified to the ALJ and reported to physicians. However, a lack of medical evidence supporting the severity of a claimant's symptoms is insufficient, standing alone, to discredit her testimony. *Villano*, 556 F.3d at 562. The ALJ failed to build a logical bridge between the evidence and his conclusion that Robert J.'s testimony was not credible. Remand is warranted for the ALJ to further evaluate Robert J.'s coping mechanism of laying down flat, including his use of the TENS unit, and if such method of relief would impair his ability to perform sustained work activity.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Robert J. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue by separate entry.

Date: 3/24/2023

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**